**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

LAWRENCE RAYMOND DAISS, III,

        Plaintiff,

   v.

ROBERT S.D. PACE,

        Defendant.

CIVIL ACTION NO.: 4:22-cv-236

**O R D E R**

Presently before the Court is Defendant Robert S.D. Pace's Motion to Dismiss Plaintiff's Second Amended Complaint.  (Doc. 22.)  This case arises out of a lawsuit filed by Defendant, an attorney who engages in debt collections on behalf of clients, to collect a purported debt owed by Plaintiff Lawrence Raymond Daiss, III.  Plaintiff brought this action in the Superior Court of Chatham County, alleging that Defendant's efforts to collect the debt violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et. seq.* ("GFBPA").  (Doc. 1-1, p. 3.)  Defendant removed the case to this Court, (doc. 1), and subsequently filed the at-issue Motion, alleging that Plaintiff's claims fail for various reasons, (doc. 22).  The issues have been fully briefed.  (Id.; docs. 24, 32.)  For the reasons stated below, the Court **GRANTS in part and DENIES in part** the Motion.  (Doc. 22.)

## BACKGROUND

The following allegations are set forth in Plaintiff's Second Amended Complaint, (doc. 16).  Plaintiff is an avid collector of antiques and military memorabilia.  (Id. at p. 4.)  At an unspecified time, Plaintiff made an oral contract with a man named Nicholas Mastopolous ("Nicholas") to purchase a complete collection of military memorabilia and other personalty from Nicholas for $149,000.  (Id.)  Plaintiff wanted to purchase Nicholas' memorabilia to supplement his own collection, which was for his personal, family, or household purposes.  (Id.)  The "primary purpose" of the transaction "was not a commercial one, but a personal, family, or household one"; Plaintiff never intended to sell the "collectible militaria," which accounted for more than 83% of the purchase price.  (Id. at p. 5.)

Unfortunately, Nicholas died, and Plaintiff thereafter signed a written "Sales Contract" drafted by Nicholas' son, Peter Mastopolous ("Peter"), which reduced Plaintiff and Nicholas' agreement to writing.  (Id.)  Pursuant to the Sales Contract, Plaintiff agreed to purchase Nicholas' "Collectible Militaria" for $124,000 and the "Contents of Garage and Shed" for $25,000.  (Id.; see doc. 16-1, pp. 7–8.)  Although Peter assured Plaintiff that he would receive Nicholas' entire collection, Peter gave away and sold a number of items from the collection to other people.  (Doc. 16, p. 6.)  Ultimately, Plaintiff received less than half of the collectible militaria and only a third of the contents of the garage and shed.  (Id. at p. 7.)  This greatly reduced the value of the items Plaintiff did receive because he did not receive full sets of memorabilia.  (Id.)

Plaintiff made some payments to Peter but declined to pay the $149,000 listed in the Sales Contract.  (Id.)  Peter retained Defendant, an attorney who regularly engages in the collection of debts for third parties, and Defendant sent Plaintiff a collection letter demanding Plaintiff pay Peter $137,000.  (Id. at pp. 3–4, 7; see doc. 16-1, pp. 10–11.)  In the collection letter, Defendant

2

threatened to sue Plaintiff if the $137,000 payment was not received in ten days.  (Doc. 16, p. 8; doc. 16-1, p. 10.)  On August 16, 2021, Defendant filed a lawsuit (the "collection suit") on Peter's behalf against Plaintiff in the Superior Court of Chatham County, seeking an award of $137,000 for Plaintiff's alleged breach of the Sales Contract.  (Doc. 16, p. 9; <u>see</u> doc. 16-1, pp. 26–30 (Peter's superior court complaint in the collection suit).)  Plaintiff was served in the collection suit on August 20, 2021.  (Doc. 16, p. 9; <u>see</u> doc. 16-2.)

On August 19, 2022,  more than a year after the collection suit was filed, but less than a year after Plaintiff was served, Plaintiff brought this action against Defendant.  (Doc. 1-1, p. 8.) Defendant removed the case to this Court.  (Doc. 1.)  Plaintiff's Second Amended Complaint asserts two counts: (1) violations of the FDCPA ("Count I") and (2) violations of the GFBPA ("Count II").  (Doc. 16.)  The crux of Plaintiff's claims is that Defendant attempted to collect a debt that Plaintiff does not owe in a false, misleading, and deceptive manner.  (<u>Id.</u>)  Defendant has filed the at-issue Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 22.)  The Motion has been fully briefed, (docs. 24, 32), and is ripe for the Court's review.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  <u>Belanger v. Salvation Army</u>, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenet "is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

### I.   Plaintiff's FDCPA Claim (Count I)

Congress enacted the FDCPA to eliminate abusive debt collection practices. 15 U.S.C. § 1692(e). The FDCPA "regulates interactions between consumer debtors and 'debt collector[s].'" Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010) (quoting 15 U.S.C. §§ 1692a(5)–(6)). Among other things, the FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of

any debt," 15 U.S.C. § 1692e, or from using any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

Plaintiff's FDCPA claim arises out of the collection suit that Defendant brought against Plaintiff on Peter's behalf.  (See generally doc. 16.)  Plaintiff alleges that Defendant improperly attempted to collect a debt that Defendant knew or should have known Plaintiff did not owe, falsely represented the character, amount, or legal status of the debt, and wrongfully attempted to collect attorney fees and expenses, even though such fees were not contemplated by the Sales Contract. (Id. at pp. 14–15.)  With respect to the alleged misrepresentations, Plaintiff alleges that, in the complaint in the collection suit, Defendant falsely alleged that (1) Peter had delivered the property identified in the contract to Plaintiff, (2) the damages sought by Peter were liquidated, (3) attorneys' fees were recoverable under the Sales Contract, and (4) Plaintiff had been unjustly enriched and was guilty of conversion.  (Id. at pp. 11, 13.)  Plaintiff further alleges that Defendant failed to give any of the statutory notices in the form required by the FDCPA.  (Id. at p. 12.)

Defendant requests the dismissal of Plaintiff's FDCPA claims on three grounds: (1) the claims are barred by the statute of limitations, (2) Plaintiff lacks Article III standing, and (3) the allegations in the Second Amended Complaint do not state a plausible claim under the FDCPA. (Doc. 22, pp. 4–16.)

### A.     Whether Plaintiff Has Article III Standing

"[S]tanding is a threshold question that must be explored at the outset of any case."  Corbett v. Transp. Sec. Admin., 930 F.3d 1225, 1232 (11th Cir. 2019).  "[A]t the motion-to-dismiss stage, [a plaintiff bears] the burden of alleging facts that plausibly establish . . . standing."  Trichell v. Midland Credit Mgmt., 964 F.3d 990, 996 (11th Cir. 2020).  "To satisfy the standing requirement, a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1083 (11th Cir. 2019) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016)).  In addition, an injury in fact must be both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Women's Emergency Network v. Bush, 323 F.3d 937, 943 (11th Cir. 2003).  "[V]ery nearly any level of direct injury is sufficient to show a concrete harm."  Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 927 (11th Cir. 2020).

Defendant appears to challenge the first two elements of the standing inquiry.  Specifically, Defendant contends that the Second Amended Complaint "asserts FDCPA violations allegedly committed by [Defendant] but fails to allege any facts showing [Plaintiff] suffered any tangible harm or concrete injury *as a result of reliance on* the alleged violations."  (Doc. 22, p. 9 (emphasis in original).)

The Court disagrees.  Plaintiff has asserted tangible harm beyond the alleged violations of the FDCPA's procedural provisions.  The United States Supreme Court recently stated that "monetary harms" are "traditional tangible harms" which "readily qualify as concrete injuries under Article III."  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021).  Therefore, "[i]f a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."  Id.  Additionally, the Eleventh Circuit Court of Appeals has found emotional harm stemming from an FDCPA violation to be sufficiently concrete to confer standing. See, e.g., Rivas v. Midland Funding, LLC, 842 F. App'x 483, 486 (11th Cir. 2021).  At least two other district courts in the Eleventh Circuit have followed suit, reasoning that "[t]he FDCPA . . . allows a plaintiff to recover any actual damage sustained as a result of a violation of the statute," and "[a]ctual damages under the FDCPA include damages for emotional distress."  See Nguyen v.

Atlanta Postal Credit Union, No. 1:21-CV-563-SDG-CCB, 2022 WL 2389226, at *4 (N.D. Ga. Feb. 16, 2022) (quoting Minnifield v. Johnson & Freedman, LLC, 448 F. App'x 914, 916 (11th Cir. 2011)); Mraz v. I.C. Sys., Inc., No. 2:18-CV-254-FTM-38NPM, 2020 WL 5876947, at *2 (M.D. Fla. Oct. 2, 2020) (same).

The Second Amended Complaint alleges that Plaintiff "relied upon [Defendant's] misrepresentations by, among other things," filing an "Answer and Counterclaim" in the collection suit and serving the same upon Defendant. (Doc. 16, p. 14.) Furthermore, the Answer and Counterclaim—a copy of which Plaintiff attached to the Second Amended Complaint—indicates that it was filed "by and through [Plaintiff's] attorney, Sherwin P. Robin," of the firm Jones, Robin and Robin, P.C. (Doc. 16-3, p. 1; see id. at p. 12.) View these allegations in Plaintiff's favor and drawing favorable inferences therefrom, Plaintiff suffered monetary harm when he retained counsel to defend him in the collection suit. See Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) (clarifying that "[t]ime or money spent in defending against a legal action taken by a debt collector against the debtor" is a concrete harm for standing purposes). Additionally, Plaintiff contends that he "has suffered mental and emotional anguish" "as a result of [Defendant's] conduct." (Doc. 16, p. 20.) Based on the forgoing authority, the Court finds that these allegations make it plausible that Plaintiff has suffered a concrete, particularized injury that is fairly traceable to Defendant's superior court suit.

Defendant maintains that this case is analogous to Trichell v. Midland Credit Management Inc., 964 F.3d 990 (11th Cir. 2020), in which the Eleventh Circuit determined that the plaintiffs lacked standing to recover under the FDCPA for representations they claimed were misleading or unfair. (Doc. 22, pp. 8–10.) Defendant argues that, like the plaintiffs in Trichell, Plaintiff has asserted only "intangible harm," in the form of FDCPA procedural violations, which is typically

insufficient.  (<u>Id.</u>)  Yet, <u>Trichell</u> is inapposite because, unlike in this case, the plaintiffs there failed to "allege that [the defendant's conduct] caused [them] any tangible injury," 964 F.3d at 997, and, instead, relied only upon bare procedural violations as well as "risk of harm" and "informational injury" theories in an attempt to confer standing, <u>id.</u> at 1000.  <u>See</u> <u>Mraz</u>, 2020 WL 5876947, at *2 ("<u>Trichell</u> is inapposite here because [plaintiff] does not rely on risk or informational injuries to confer standing.  Rather, [plaintiff here] alleged that [defendant's] collection efforts caused him emotional distress."); <u>Nguyen</u>, 2022 WL 2389226, at *4 ("Defendants point to the Eleventh Circuit's decision in <u>Trichell</u>.  But in that case, the plaintiff did not allege any tangible injury—instead, he asserted only intangible injuries, in the form of alleged violations of the statute.  Here, in contrast, Plaintiff alleges the tangible injury of emotional distress.") (internal citation omitted).

The Court is also not persuaded by <u>Jones v. Nationwide Recovery Service</u>, No. 1:20-cv-02114-TCB-AJB, 2021 WL 8268138 (N.D. Ga. July 20, 2021), another case cited by Defendant.  In <u>Jones</u>, the court stated that "[l]iability for attorneys' fees is insufficient to establish standing where none exists on the underlying claim."  <u>Id.</u> at *6.  However, in <u>Jones</u>, the attorneys' fees the court was referring to were the fees that the plaintiff had incurred in *bringing* the *FDCPA* suit.  The court properly found that such fees were not the "result of the putatively illegal conduct of the defendant," and thus, could not confer standing.  <u>Id.</u> (emphasis omitted) (quoting <u>Diamond v. Charles</u>, 476 U.S. 54, 69–71 (1986)).  The present case is distinguishable because Plaintiff is not attempting to "bootstrap" the fees he has or will incur litigating *this* suit to establish an injury in fact.  <u>Id.</u>  Rather, he has plausibly alleged (and the documents attached to the Second Amended Complaint show) that he retained counsel to assist him in defending against the *collection* suit—which is the underlying basis for his FDCPA claim.  Moreover, Plaintiff has also alleged that he suffered mental and emotional anguish because of Defendant's debt collection efforts.

Accordingly, unlike in <u>Jones</u>, here Plaintiff *has* alleged "that he has suffered a concrete injury pertaining to the underlying claim." <u>Id.</u>

Finally, Defendant has failed to cite to any authority to support his contention that Plaintiff must allege his injuries occurred "as a result of [his] reliance" on Defendant's alleged misconduct. (Doc. 22, p. 9.)  Rather, all that Plaintiff must do at this stage is plausibly allege that his claimed injuries are "fairly traceable" to Defendant's challenged conduct—the filing of the collection suit and the inclusion of allegedly false and misleading statements in the pleadings therein.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–561 (1992); <u>see also</u> <u>Losch v. Nationstar Mortg. LLC</u>, 995 F.3d 937, 943 (11th Cir. 2021) ("[A plaintiff] has standing to pursue his claims so long as even a small part of the injury is attributable to [the defendant].").  The Court finds that Plaintiff has plausibly alleged that his injuries—the time, money, and effort to retain counsel to represent him in the collection suit and his resulting mental anguish—are fairly traceable to Defendant's filing of the collection suit.

For the forgoing reasons, Defendant's Motion is denied to the extent it is based on the theory that Plaintiff has not sufficiently alleged an injury in fact and thus lacks standing.

**B.     Whether Plaintiff's Claims Are Barred by the FDCPA's One-Year Statute of Limitations**

Suits under the FDCPA must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  As Defendant correctly notes, Plaintiff's FDCPA claims "hinge[] on alleged violations [Defendant] made within [] (1) [the] demand letter to Plaintiff, and (2) the underlying complaint [in the collection suit]."  (Doc. 22, p. 4; <u>id.</u> ("Every single false or misleading statement allegedly occurred either in the demand letter dated August 2, 2021[,] or in the lawsuit filed August 16, 2021.").)  Defendant contends that Plaintiff's FDCPA claims are time-

barred because he brought this action on August 19, 2022, more than one year after Defendant sent the collection letter and more than one year after he filed the collection suit.  (Id. at pp. 4–8.)

### (1)     Claims Arising from the Collection Letter

With respect to the collection letter, "[t]he statute of limitations on an FDCPA claim based on a written communication begins to run the date the communication is mailed."  Owens-Benniefield v. BSI Fin. Servs., 806 F. App'x 853, 857 (11th Cir. 2020).  The Second Amended Complaint alleges that Defendant sent the collection letter on August 2, 2021.  (Doc. 16, p. 7; see doc. 16-1, p. 10 (collection letter dated August 2, 2021).)  Therefore, Plaintiff's filing of this action on August 19, 2022, was well-beyond the deadline pursuant to the statute of limitations, and his claims arising from the collection letter are time-barred.

### (2)     Claims Arising from the Collection Suit

The determination of the limitations period applicable to Plaintiff's claims based upon the filing of the collection suit is less straightforward.  "Courts disagree as to when this statute begins to run where the alleged violation is the filing of a lawsuit."  Sanchez v. Mann Bracken, LLC, No. 1:07-cv-02292-GET-LTW, 2008 WL 11417077, at *4 (N.D. Ga. Apr. 17, 2008), *report and recommendation adopted*, No. 1:07-cv-2292-GET, 2008 WL 11417123 (N.D. Ga. June 2, 2008); see Schaffhauser v. Citibank (S.D.) N.A., 340 F. App'x 128, 130–31 (3d Cir. 2009) ("Where FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, courts are split as to when the FDCPA's one-year statute of limitations begins to run . . . .").  Some courts have held that the statute of limitations commences when the underlying complaint is filed. See, e.g., Naas v. Stolman, 130 F. 3d 892, 893 (9th Cir. 1997) ("The alleged violation of the Act was . . . the bringing of the suit itself. . . .  We hold that the statute of limitations began to run on the filing of the complaint in the Municipal Court.").  Others have held the statute of limitations is

triggered upon *service* of the underlying action.  See, e.g., Johnson v. Riddle, 305 F.3d 1107, 1115 (10th Cir. 2002).

The Eleventh Circuit has not definitively decided when the alleged violation occurs for purposes of Section 1692k(d) when the plaintiff's claims arise out of a collection lawsuit.  The court came closest to addressing this issue in an unpublished opinion, Rivas v. The Bank of New York Mellon, 676 F. App'x 926 (11th Cir. 2017).  In Rivas, the plaintiff alleged that the defendant-bank violated the FDCPA when it brought a foreclosure action against him in state court.  Id. at 928.  The district court found that Rivas's FDCPA claim was untimely because it was filed more than a year after the underlying foreclosure action had been filed.  Id. at 929.  On appeal of that determination, the Eleventh Circuit acknowledged that "every other court to consider the question has determined that the clock begins to run on *either* the date the initial suit was filed *or* the day the FDCPA plaintiff became aware of the initial suit—not when the initial suit ultimately was terminated."  Id. at 929–30 (emphasis added) (citing Serna v. Law Office of Joseph Onwuteaka, P.C., 732 F.3d 440, 445–46 (5th Cir. 2013) and Naas, 130 F.3d at 893).  In affirming the determination that the FDCPA claim was untimely when filed, the court agreed generally with *both* of these positions and rejected only the theory that the statute of limitations does not begin to run until the underlying suit is *terminated*.  Id. at 930.  Notably, the Rivas court did not need to choose between the remaining two potential triggering dates because Rivas's FDCPA claim was filed more than *three* years after *both* the date the foreclosure action had been filed *and* the date Rivas had filed a notice of appearance in that action.  Id. (Because Rivas's claims were based upon the defendant's debt collection suit, "the statute of limitations . . . began to run . . . when [the defendant-bank] filed the [underlying action], *or, at the latest,* . . . when [the FDCPA plaintiff] filed a notice of appearance in the [underlying action].  Rivas filed this action . . . over three years

later.  His FDCPA claim therefore is barred.") (emphasis added).  Thus, while <u>Rivas</u> indicates that the statute of limitations may have been triggered when Defendant filed the collection suit, it also leaves open the possibility that, as Plaintiff contends, the statute of limitations did not begin to run until he was served with process in the collection suit.

Defendant principally relies upon <u>Rotkiske v. Klemm</u>, in which the United States Supreme Court held that, "absent the application of an equitable doctrine, the statute of limitations in [Section] 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered."  140 S. Ct. 355, 358 (2019).  The court reasoned that the plain meaning of the terms "violation" and "occur" corroborates what is clear from the text of Section 1692k(d): that "[t]he FDCPA limitations period begins to run when the alleged violation actually happened."  <u>Id.</u>  In so holding, the court rejected the application of a so called "discovery rule" to FDCPA applications, which would allow the statutory clock to begin on the date the FDCPA plaintiff discovered the alleged violation.  <u>Id.</u>

Defendant, assuming that Plaintiff is relying upon the discovery rule, argues that <u>Rotkiske</u> bars Plaintiff's argument that the statutory period began upon service of the underlying complaint. (Doc. 22, pp. 6–7; doc. 32, pp. 2–3.)  However, it is clear from Plaintiff's Response that he is not seeking to apply the discovery rule.  In fact, he explicitly concedes that the discovery rule is inapplicable and that, under <u>Rotkiske</u>, the one-year period begins to run on the date the alleged FDCPA violation "actually happened."  (Doc. 24, p. 6.)  Instead, Plaintiff argues that the violation did not actually happen until Defendant served him in the Collection suit, and, therefore, under <u>Rotkiske</u>, that is when the one-year clock began ticking.  (<u>Id.</u> at pp. 6–11.)  For support, Plaintiff cites the Eleventh Circuit's holding in <u>Maloy v. Phillips</u> that the statute of limitations began to run when a debt collector mailed a collection letter, as opposed to when the plaintiff received it,

because that was the debt collector's "last opportunity to comply" with the FDCPA.  64 F.3d 607, 608 (11th Cir. 1995).  According to Plaintiff, <u>Maloy</u> establishes that "the date the violation actually happens is the one on which the debt collector last had an opportunity to comply with the FDCPA." (Doc. 24, p. 6.)  Therefore, Plaintiff contends, because Defendant's "last opportunity to comply with the FDCPA was before he served [Plaintiff] with the offending [c]omplaint[,] . . . the violation occurred, and the statute of limitations began to run, on August 20, 2021."  (<u>Id.</u>)

Defendant concedes that, in <u>Maloy</u>, the Eleventh Circuit "held that the FDCPA's statute of limitations begins to run upon a defendant's 'last opportunity to comply with the FDCPA.'" <u>Mcnorrill v. Asset Acceptance, LLC</u>, No. 1:14-cv-210, 2016 WL 3963077, at *2 (S.D. Ga. July 21, 2016) (quoting <u>Maloy</u>, 64 F.3d at 608); (<u>see</u> doc. 22, pp. 6–7; doc. 32, p. 3).  Other federal circuit courts have adopted this approach.  <u>See, e.g.</u>, <u>Mattson v. U.S. West Comms., Inc.</u>, 967 F.2d 259, 261 (8th Cir.1992); <u>Naas</u>, 130 F.3d at 893.  However, Defendant insists that where the claim is based on a debt collection lawsuit, the debt collector's last opportunity to comply is the *date of filing*, not service.  (Doc. 22, p. 7.)  Accordingly, the issue the Court must decide is: when a debt collector is alleged to have unlawfully initiated a debt collection lawsuit against a debtor, when was the last opportunity for the debt collector to comply with the FDCPA?

The Court agrees with Plaintiff that Defendant's last opportunity to comply with the FDCPA was August 20, 2021, when he served Plaintiff with the complaint in the collection suit. The Court is persuaded first and foremost by the Tenth Circuit Court of Appeals' reasoning in <u>Johnson v. Riddle</u>, 305 F.3d 1107 (10th Cir. 2002).  <u>Johnson</u> is directly on point.  Like the present case, the plaintiff there brought an FDCPA suit against an attorney who had filed a state suit against her.  <u>Id.</u> at 1112.  The plaintiff filed suit exactly one year after she had been served with the state suit, but a year and ten days after the state complaint had been filed.  <u>Id.</u>  The defendant filed a

motion to dismiss on statute of limitations grounds, and the lower court denied the motion.  Id. at

1112–14.  On appeal, the Tenth Circuit affirmed, rejecting the defendant's argument that the

violation occurred upon filing rather than upon service and holding that, "where the plaintiff's

FDCPA claim arises from the instigation of a debt collection suit, . . . no violation occurs within

the meaning of [Section] 1692k(d) . . . until the plaintiff has been served."  Id. at 1113.  Relying

on the approach in Mattson—which was also relied upon and adopted by the Eleventh Circuit in

Maloy, 64 F.3d at 608—the Tenth Circuit, in Johnson, reasoned that the "decision of whether to

serve the debtor is the creditor's last opportunity to comply with the FDCPA."  Id. at 1114 n.4

(citing Mattson, 967 F.2d at 261).  The court determined that while filing a complaint is perhaps

"half an actionable wrong," a debt collector could always "call off the process server and abandon

the collection suit before the plaintiff has been served."  Id. at 1113–14.  Additionally, the court

stated that the date of service is "easily ascertainable by each party," id. at 1113–14, a consideration

which the Eleventh Circuit found persuasive in Maloy, 64 F.3d at 608.  Finally, the court noted

that using the service date prevents a debt collector from "effectively block[ing] any action under

the [FDCPA] by filing suit and then delaying service" until the one-year clock runs out.  Johnson,

305 F.3d at 1114.

In Serna, the Fifth Circuit Court of Appeals also held that the alleged FDCPA violation

occurred when the debtor was served, not when the allegedly unlawful lawsuit was filed.  732 F.3d

at 445; accord Benzemann v. Citibank N.A., 806 F.3d 98, 103 (2d. Cir. 2015).  The court agreed

with Johnson's concern that tying the occurrence date to the filing date "creates a perverse

incentive for unscrupulous debt collectors to file debt-collection actions and purposefully delay

service."  Serna, 732 F.3d at 446.  This would, the court found, "frustrate[] the purpose of the

FDCPA because it forces alleged debtors to scour court records in order to preserve their rights." Id.

Defendant does not address Serna, and the only argument he raises against Johnson is that "this Circuit rejected the 'discovery rule' and the analysis in Johnson . . . ." (Doc. 22, p. 6.)  For support, Plaintiff cites a case from the Northern District of Georgia, Sanchez, 2008 WL 11417077. In Sanchez, the plaintiff brought an FDCPA suit more than one year after the defendant-debt collector initiated a debt collections suit against her, but less than one year after the defendant voluntarily dismissed the suit.  Id. at *1.  The plaintiff was never served in the underlying action. Id.  The defendant moved to dismiss the claims as time-barred, and the plaintiff argued that her claims were timely because she filed them within one year of receiving the defendant's notice of voluntary dismissal.  Id. at *4.  The court rejected the plaintiff's attempt to apply the discovery rule and held that the plaintiff was required to file her FDCPA claims within one year from the date the defendant initiated the state action because that is when the alleged violation occurred for purposes of Section 1692k(d).  Id. at *4–5.

The district court reached this decision without citing Johnson or evaluating its reasoning regarding the FDCPA's statute of limitations.  Id.  Indeed, Sanchez merely cited Johnson when setting forth the standards applicable to Section 1692k(d).  Id. at *4 (recognizing that Johnson held "that the statute of limitations begins to run only once a defendant has been served with process" and citing Johnson in explaining that "the general rule among the circuits—including the Eleventh Circuit—appears to be that the applicable statute of limitations begins to run on the date of the last opportunity for the putative debt collector to comply with the FDCP").  Notably, however, in a different section of the order, the Sanchez court *relied* on Johnson to hold that "in order to allege a viable FDCPA claim based on a creditor's filing of a lawsuit, a plaintiff must have been served

with that lawsuit."  Id. at *3 (citing Johnson, 305 F.3d at 1113–14).  In reaching this conclusion, the Court stated that, when a debt collector "actively pursues [a collections lawsuit] by effecting service of process," the debt collector has "*for[gone] the last opportunity to comply with the FDCPA.*"  Id. (emphasis added) (citing Johnson, 305 F.3d at 1114 n.4).  Thus, Sanchez supports Johnson's analysis and bolsters the Court's conclusion that service triggers the statutory clock in this case.  Accordingly, Defendant's reliance on Sanchez to show that courts in this circuit have rejected Johnson is misplaced.[1]

In sum, the Court agrees with the reasoning in the Johnson and Serna decisions, that when a plaintiff's FDCPA claims arise out of a collection suit, the "violation occurs" for purposes of Section 1692k(d) when the plaintiff is served because that is the debt collector's last opportunity to comply with the statute.  Because Plaintiff has alleged (and the documents attached to the Complaint show) that Defendant served him in the collection suit on August 20, 2021, and Plaintiff

---

[1]  The Court is also unpersuaded by Defendant's reliance on Anderson v. Jefferson Capital System, LLC, No. 1:16-cv-01082-CC-RGV, 2016 WL 9558952 (N.D. Ga. Nov. 7, 2016), and Tillman v. Air Autovest, LLC, No. 2:16-cv-00211-RDP, 2016 WL 4379455 (N.D. Ala. Aug. 17, 2016), to show that, "[i]n this Circuit, the triggering event for an FDCPA claim [is] the filing of a complaint[] because it is the alleged debt collector's last opportunity to comply with the statute."  (Doc. 32, p. 3.)  First, these district court decisions are merely persuasive authority, and the Court is not bound by them in any way.  See Fox v. Acadia State Bank, 937 F.2d 1566, 1570 (11th Cir. 1991) (per curiam) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court . . . .").  Additionally, while these district courts noted that the one-year limitations period began to run when the complaint was filed in the collections suit, they apparently had not been presented with any argument that the statute of limitations actually began to run at a later date, such as the time of service of process.  See Anderson, 2016 WL 9558952, at *3–4 (where the plaintiff had filed his FDCPA suit within one year of the defendants' filing of the collections action, but the defendants argued that the statute of limitations had expired because it had been triggered on the date that defendants signed and notarized their statements of claim (initiating the collections action), which was weeks before they *filed* their collections action); Tillman, 2016 WL 4379455, at *8–9 (noting—after finding that the FDCPA claim was due to be dismissed for lack of plausibility—that the claim was also time barred, but not discussing whether or when service of process had occurred).  In fact, the Anderson court even recognized *sua sponte* that Johnson suggests a debt collector's last opportunity to comply with the FDCPA (for purposes of an FDCPA claim arising out of a collection suit) is just prior to service of the complaint.  2016 WL 9558952, at *4 n.6.  However, the Anderson court declined to consider the impact of Johnson on its holding because (unlike in this case) the plaintiff was never served and the parties had not addressed Johnson's impact.  Id.

filed the Complaint in this action on August 19, 2022, his claim is timely.  Accordingly, Defendant is not entitled to the dismissal of Plaintiff's collection-suit-based FDCPA claims for being untimely.

### C.    Whether Plaintiff Has Plausibly Alleged that the Funds Defendant Sought to Collect on Peter's Behalf Constitute a Consumer Debt under the FDCPA

Defendant next contends that Plaintiff "fails to allege sufficient factual content giving rise to a plausible claim arising from a consumer debt under FDCPA."  (Doc. 22, p. 12.)  "To recover under. . . the FDCPA . . . a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'"  Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 836–37 (11th Cir. 2010).  Under 15 U.S.C. § 1692a(5), the term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  The term "consumer" is defined as "any natural person obligated or allegedly obligated to repay a debt."  15 U.S.C. §1692a(3).

Defendant argues that the money Plaintiff owes under the Sales Contract—and which forms the basis of the collection suit—is not a "debt" under the FDCPA because the Sales Contract "involves a *business transaction*, not a personal, family, or consumer transaction."  (Doc. 22, p. 12.)  Defendant points out that, under the terms of the Sales Contract, Plaintiff would resell some of the objects he was purchasing to fund the transaction.  (Id. at p. 13.)  Therefore, according to Defendant, the parties understood that "*at least some portion of the transaction would be commercial*."  (Id. (emphasis added).)  However, the fact that "some portion" of the transaction would be funded by the sale of some of the purchased items is inapposite.  What matters is whether the obligation to pay "arise[es] out of a . . . transaction in which the money, property, insurance,

or services at issue are . . . *primarily* for personal, family, or household purposes." 15 U.S.C. § 1692a(5) (emphasis added).

The Second Amended Complaint alleges that Plaintiff is "an avid collector of antiques and military memorabilia" and that he wanted to purchase Nicholas' military memorabilia "to add to his own personal collection," which was for "personal, family, or household purposes." (Doc. 16, p. 4.) Plaintiff also alleged that the "primary purpose" of the transaction "was not a commercial one, but a personal, family, or household one" and that he never intended to sell the collectible militaria, which accounted for more than 83% of the purchase price of the Sales Contract. (Id. at p. 5.) Accepting these allegations as true and evaluating all plausible inferences derived therein in Plaintiff's favor, as the Court must at this stage, the Court finds that they adequately support a finding that the underlying transaction was primarily for Plaintiff's personal, family, or household purposes. Therefore, Plaintiff has plausibly alleged that the money he allegedly owes to Peter pursuant to the Sales Contract, which Defendant is attempting to collect in the collection suit, is a "debt" under the FDCPA as defined by Section 1692a(5). Cf. Yarra v. Arias Bosinger, PLLC, No. 6:21-cv-1857-PGB-DAB, 2022 WL 4367166, at *3 (M.D. Fla. Sep. 21, 2022) (dismissing FDCPA claim because "nothing in the pleadings indicate[d] that [p]laintiff ever used or planned to use the property at issue even partially in a personal way"). While perhaps discovery will reveal evidence to the contrary, Plaintiff's allegations suffice to meet his burden at this stage. Therefore, dismissal of his FDCPA claims is not warranted on this basis.

D.      **Whether Plaintiff Has Plausibly Alleged that Defendant is a Debt Collector**

Defendant finally argues that Plaintiff did not adequately allege that Defendant is a "debt collector" under the FDCPA. (Doc. 22, p. 15.) According to Defendant, the Second Amended

Complaint states that Defendant is a debt collector but "fails to include facts to support that conclusion as required." (Id.)  The Court disagrees.

The term "debt collector" means "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).  The Supreme Court has held that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." Heintz v. Jenkins, 514 U.S. 291, 294 (1995).  The Second Amended Complaint alleges that Defendant

> regularly engages in the collection of debts for third parties, including by foreclosure, garnishment, collections actions, dispossessories, and evictions. Among other things, Defendant . . . has filed in the Chatham County Courts: Consumer Debt collection suits; Consumer dispossessory actions; Consumer collections of rents; Consumer actions to terminate storage facilities contracts along with abandonment of personal property; Consumer residential foreclosure actions; and Consumer wage garnishments.

(Doc. 16, p. 3.)  Contrary to Defendant's argument, these allegations allow the court to "draw the reasonable inference" that Defendant is a "debt collector" under the FDCPA. Ashcroft, 556 U.S. at 678.  Viewed in Plaintiff's favor, the allegations plausibly show that Defendant regularly attempts to collect consumer debts.  Therefore, this case is distinguishable from Pritchett v. Ocwen Loan Servicing, LLC, 2:18-cv-00217-RWS-JCF, 2019 WL 2323629 (N.D. Ga. Apr. 11, 2019), and the other cases cited by Defendant where a plaintiff merely alleged in conclusory fashion that a defendant was a debt collector and/or recited the elements of the statutory definition of a debt collector.

Accordingly, Defendant's Motion on this ground is denied.

## II.   Plaintiff's GFBPA Claim (Count II)

The Georgia legislature enacted the GFBPA "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state."  O.C.G.A. § 10-1-391(a).   Under O.C.G.A. § 10-1-393(a), the GFBPA declares unlawful any "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]"

Defendant seeks the dismissal of Plaintiff's GFBPA claim on various grounds, including that Plaintiff failed to adequately allege that he sent a 30-day ante litem notice to Defendant before he brought this action.  (Doc. 22, pp. 16–19.)  Under O.C.G.A. § 10-1-399(b), at least thirty days prior to bringing an action under the GFBPA, "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent."  "[A] plaintiff who fails to deliver to the defendant a written demand for relief at least thirty days prior to filing suit is barred from recovering under the Act."  Walker v. JPMorgan Chase Bank, N.A., 987 F. Supp. 2d 1348, 1354 (N.D. Ga. 2013).   The sufficiency of notice is a question for the court.  Lynas v. Williams, 454 S.E.2d 570, 573 (Ga. Ct. App. 1995)

The Second Amended Complaint alleges that Plaintiff's Answer and Counterclaim in the collection suit, which was filed and served October 29, 2021, "constitute[s] notice of the GFBPA claim against [Defendant]."  (Doc. 16, p. 3; see doc. 16-3, pp. 12–13.)  Conceding that the GFBPA does not impose a "specific form for the 30-day notice," Defendant contends that Plaintiff's Answer and Counterclaim was not a proper notice because it demanded relief not from Defendant, but rather from Defendant's client, Peter, based upon the allegations against Plaintiff in the collection suit.  (Doc. 22, pp. 17–18.)  Plaintiff responds that the filing was a proper notice because

it was delivered to Defendant, a prospective respondent, and included all the information required by the GFBPA. (Doc. 24, pp. 20–22.)

Assuming (without deciding) that a responsive pleading may satisfy Section 10-1-399(b)'s notice requirement, the Court finds that Plaintiff's Answer and Counterclaim in the collection suit was insufficient for two reasons. First, it doubtfully constitutes a proper "demand for relief" from Defendant. O.C.G.A. § 10-1-399(b). Although Plaintiff counterclaimed for damages, the damages are purportedly for *Nicholas and Peter's* alleged misconduct and fraud in the memorabilia sale— not any debt collection efforts by Defendant. (See doc. 16-1, pp. 10–11.) Second, the Answer and Counterclaim does not "reasonably describ[e] the unfair or deceptive act or practice relied upon and the injury suffered." O.C.G.A. § 10-1-399(b). The only allegation pertaining to debt collection provides: "[Peter] by and through his attorney has violated the [FDCPA] and the [GFBPA] by attempt[ing] to collect a debt from a consumer without complying with the Rules of either Statute, thus [Plaintiff] is entitled to forgiveness of the debt and the proscribed penalties." (Doc. 16-3, p. 11.) This paragraph neither identifies any "unfair or deceptive act or practice" nor details any injury Plaintiff suffered.

Thus, although "the notice requirement of O.C.G.A. § 10-1-399(b) must be liberally construed," Stringer v. Bugg, 563 S.E.2d 447, 449 (Ga. Ct. App. 2002), the Court finds that Plaintiff's Answer and Counterclaim in the collection suit does not constitute an adequate demand for relief under the GFBPA. Accordingly, Plaintiff's GFBPA claim is barred.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 22.) Specifically, the Court **GRANTS** the Motion as to Plaintiff's FDCPA claim (Count I) to the extent it is based on

Defendant's sending the collection letter and **GRANTS** the Motion as to Plaintiff's GFBPA claim (Count II) in its entirety.  However, the Court **DENIES** the Motion as to Count I to the extent is based on the filing of the collection suit.  The Court **LIFTS** the previously imposed stay of this case and **DIRECTS** the parties to comply with the directives of the Court's March 9, 2023, Order, (doc. 31).

   **SO ORDERED**, this 24th day of August, 2023.

           _____

           R. STAN BAKER
           UNITED STATES DISTRICT JUDGE
           SOUTHERN DISTRICT OF GEORGIA